# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| TONY G. HEWITT, | 3:11-cv-00642-RCJ-WGC |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| OFFICER WILSON, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, Chief United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. section 636(b)(1)(B) and Rule IB 1-4 of the Local Rules of Practice.

Currently before the court are three (3) motions:

1. Defendants Officer Wilson *et al.*'s Motion for Summary Judgment. (Doc. # 28.)[1] Plaintiff Tony G. Hewitt opposed (Doc. # 31) and Defendants replied (Doc. # 38);

2. Hewitt's Motion for Court Order (Doc. # 35). Defendants opposed (Doc. # 41) and Hewitt filed no reply brief; and

3. Hewitt's Motion for Temporary Restraining Order (Doc. # 44). Defendants opposed (Doc. # 47) and Hewitt filed no reply brief.

After a thorough review, the court recommends Defendants Motion for Summary Judgment should be granted, and both of Hewitt's Motions (Docs. # 35, # 44) should be denied.

---

[1] Refers to the court's docket number.

## I. BACKGROUND

Plaintiff Tony G. Hewitt, a *pro se* litigant in the custody of the Nevada Department of Corrections ("NDOC"), brings this action pursuant to 42 U.S.C. section 1983. (Pl.'s First Am. Compl. (Doc. # 6) at 1.) The events giving rise to this litigation occurred while Hewitt was housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada, where he currently resides. (*Id.*) Defendants are Karen Gedney, John Peery, Adam Watson and Jonathan Wilson (collectively "Defendants," unless referred to individually or otherwise noted). (*Id.* at 2-3.)

On screening, the court determined Hewitt's Complaint stated a colorable claim under the Eighth Amendment against Defendants. (Doc. # 7 at 2.) Hewitt's Eighth Amendment claim alleges Defendants acted with deliberate indifference to a serious medical need when he was placed in handcuffs following arm surgery and thereafter returned to prison housing, instead of hospital aftercare. (Doc. # 6 at 5-7; Doc. # 7 at 1.) As a consequence, Hewitt contends Defendants violated his Eighth Amendment rights. (Doc. # 6 at 13.) He seeks general, compensatory and punitive damages. (*Id.* at 14.) He also seeks a "preliminary and permanent injunction, to prevent N.D.O.C. and its employee's [sic] from performing the violative acts set fourth [sic] in [his] . . . Complaint." (*Id.*)

Defendants now move for summary judgment and contend: (a) Hewitt had no serious medical need; (b) even if Hewitt had a serious medical need, they did not act with deliberate indifference to that need; and (c) they are entitled to qualified immunity. (Doc. # 28 at 7-10.)

## II. STANDARD OF REVIEW

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id*. (quoting FED. R. CIV. P. 56(c)). Where reasonable minds

could differ on the material facts at issue, however, summary judgment is not appropriate. *See Liberty Lobby*, 477 U.S. at 250.

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *See Liberty Lobby*, 477 U.S. at 248-50. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In determining summary judgment, a court applies a burden shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish

3

that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal quotations and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

### III. DISCUSSION

The court will first address Defendants' motion for summary judgment. (Doc. # 28.) Then, the court will turn to Hewitt's two (2) motions, his Motion for Court Order (Doc. # 35) and his Motion for Temporary Restraining Order (Doc. # 44).

**A. Defendants' Motion for Summary Judgment: Deliberate Indifference**

*1. Summary of Hewitt's Allegations*

Hewitt's Complaint alleges that on February 15, 2011, he was transported to Sierra Surgery for a surgical procedure on his right arm (a "fistula") for dialysis purposes. (Doc. # 6 at 5.) Upon his return to NNCC after the surgery, Hewitt claims Defendant Wilson applied handcuffs to both arms, against the medical orders from Hewitt's surgeon, Dr. Timothy King, and despite Hewitt's own protests. (*Id*. at 6.) According to Hewitt, Wilson's act of placing handcuffs on his arms caused the surgical wound on his right arm to bleed profusely and resulted in severe pain. (*Id*. at 6-7; Doc. # 7 at 1.) As a result, the surgery failed and the procedure had to be repeated on March 22, 2011. (Doc. # 6 at 5.)

4

1  In addition, Hewitt contends Defendants Gedney and Peery were his treating medical care
2  personnel at NNCC and that they failed to ensure his post-surgery care was adequate. (Doc. # 7 at 2.)
3  Specifically, Hewitt alleges Gedney and Peery, along with Defendant Watson, intentionally sent Hewitt
4  back to general housing (Unit 7) instead of the hospital unit at NNCC, despite Dr. King's written orders
5  requiring Hewitt's return to the hospital unit. (*Id*.) Hewitt also claims Gedney, Peery and Watson failed
6  to relay Dr. King's orders to the Unit 7 officers. (Doc. # 6 at 9.) All of this caused Hewitt to suffer severe
7  pain, extreme loss of blood and the need for a repeat surgery. (Doc. # 7 at 2.)

### *2. Summary of Evidence*

The evidence in this case is not extensive. Much of the relevant documentary evidence is contained in various exhibits attached to a previous moving paper filed by Defendants (*see* Docs. # 17; # 17-1; # 18) in opposition to Hewitt's Motion for Reconsideration of Order (Doc. # 14) regarding his *in forma pauperis* application, which was denied (Doc. # 26). The documents of which this evidence is comprised was properly authenticated previously (*see* Doc. # 17-1), and Defendants specifically cite to these documents in their motion for summary judgment. Therefore, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the court may consider this evidence even though it is not attached to Defendants' instant Motion for Summary Judgment. *See* FED. R. CIV. P. 56(c)(3) ("The court need consider only the *cited* materials, but it *may* consider *other materials in the record*.") (emphasis added).

Dr. King, a surgeon with Sierra Surgery & Imaging, performed a fistula placement surgery on Hewitt on February 15, 2011, for dialysis purposes. (*See, e.g.*, Doc. # 28-1, Ex. A at 2; Doc. # 47-1, Ex. A at 3.) Thereafter, Dr. King presumably prepared an Inmate Transfer Summary ("ITS") dated February 15, 2011,[2] which lists Hewitt as the patient and contains some brief instructions. (Doc. # 18-1, Ex. A at 2.) Most of the instructions in the "Special Instructions" section of the ITS refer to Hewitt's follow-up visit and pain medications. (*Id.*) For example, the ITS shows Hewitt was prescribed antibiotics, that Hewitt could take the pain medication of his choice, and that Hewitt's follow-up visit would be on Dr. King's next prison visit. (*Id.*) Dr. King, however, provides no discernible instructions

---

[2] While it appears from the record that Dr. King prepared the ITS (*see* Doc. # 18-1 at 2; Doc. # 28-1 at 2), the identity of the ITS's author is largely irrelevant. The court is more concerned with the substance of the instructions in the ITS.

5

regarding the alleged non-use of handcuffs or the appropriate housing unit to which Hewitt should return after surgery.

In his declaration, Dr. King states he does not have a specific recollection of Hewitt's surgery. (Doc. # 17-1, Ex. D at 7 ¶ 7.) But, based on his normal habit and practice, Dr. King indicates it would be unnecessary to instruct that an inmate be free from arm restraints or handcuffs following fistula placement, absent very unusual circumstances that would be explicitly noted and recorded. (*Id.* at 7 ¶ 7.)

Gary Dutton and Edward Peterman, NDOC correctional officers, transported Hewitt to and from surgery on February 15, 2011. (Doc. # 28-1, Ex. A at 2.) Although Dutton does not recall that particular day, he states in his declaration that he does not remember *ever* receiving a "no handcuffs" instruction over all of his years of providing transportation to inmates. (*Id.*, Ex. B at 4 ¶ 7.) He states such an instruction would be so "unique" that he would remember it, but he does not recall being so instructed with regard to Hewitt, or any other inmate that he has ever transported. (*Id.*) According to Dutton, if he were to receive a "no handcuffs" instruction, he would need specific authorization from the prison's Warden before transporting an inmate without handcuffs. (*Id.*) In Hewitt's case, however, he does not recall receiving a "no handcuffs" instruction, nor does he recall receiving the Warden's authorization for such a transport. (*Id.*)

Like Dutton, Peterman states in his declaration that he was not given any written or verbal instruction by Dr. King or anyone else that Hewitt should not be placed in handcuffs following surgery. (*Id.*, Ex. C at 7 ¶ 7.) He similarly asserts such an instruction would be so "unique" that he is certain he would remember it if he was so instructed, but he does not recall receiving any such instruction with regard to Hewitt. (*Id.*)

Unlike Dutton, however, Peterman does remember transporting Hewitt on February 15, 2011. (*Id.*) According to Peterman, he and Dutton had "transport orders" to keep Hewitt in restraints. (*Id.*) Peterman remembers Hewitt's request not to be placed in arm restraints, but Peterman states this request was denied because it conflicted with the transport orders. (*Id.* at 7-8 ¶ 7.) Further, Peterman states Hewitt's surgical site was "at least a few inches from where the handcuffs . . . [were] placed" and that "we placed the cuffs loosely on the arm with the surgical site." (*Id.* at 8 ¶ 7.) Peterman asserts "[t]here

6

were no problems related to that arm, the cuffs, or the surgical site during the transport." (*Id.*)

In addition, Hewitt's medical records show Dr. Michael N. Murphy, a NDOC nephrologist, performed a follow-up examination of Hewitt on an unrelated health matter.[3] (Doc. # 18-1, Ex. B at 4.) It appears this examination occurred on March 4, 2011. (*Id.*) Dr. Murphy's notes from this visit specifically indicate that Hewitt's February 15, 2011 surgery with Dr. King "failed," but that the failure was "unrelated to 'cuffs.'" (*Id.*)

### *3. Legal Standard*

In the recent case of *Akhtar v. Mesa*, --- F.3d ---, 2012 WL 5383038 (9th Cir. Nov. 5, 2012), the Ninth Circuit reiterated the two-pronged test for evaluating a claim for deliberate indifference to a serious medical need. Quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), the court explained:

> First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

2012 WL 5383038 at *9.

Deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). Also, "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they . . . intentionally interfere with medical treatment," *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted), or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner, *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citing *Martinez v. Mancusi*, 443 F.2d 921 (2d Cir. 1970)). "The requirement of deliberate indifference is less stringent in cases involving a prisoner's medical needs than in other cases involving harm to incarcerated individuals because '[t]he State's responsibility to provide inmates with

---

[3] Hewitt suffers from kidney failure and requires dialysis. (*See* Doc. # 26 at 1.)

7

medical care ordinarily does not conflict with competing administrative concerns.'" *McGuckin*, 974 F.2d at 1060 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

### *4. Analysis*

Defendants argue they are entitled to summary judgment because Hewitt has not supplied any evidentiary support to show Defendants acted with deliberate indifference by contravening alleged medical orders concerning handcuffs. (Doc. # 28 at 7.) Additionally, Defendants assert "there were no orders that he be returned to the NNCC medical unit, or that he be free from arm restraints following the 2/15/11 procedure." (*Id.*) Defendants contend Hewitt's allegations, at most, demonstrate mere negligence or gross negligence for which section 1983 provides no remedy. (*Id.*) Further, in light of Dr. Murphy's notation that Hewitt's failed surgery was "unrelated" to being placed in handcuffs, Defendants contend Hewitt cannot show that Defendants' alleged deliberate indifference caused any of the damages he suffered. (*Id.* at 8.)

In his opposition brief, Hewitt asserts "[i]t is a disputed fact that the problem with Plaintiffs first fistula was caused by cuffs at NNCC Housing Unit 7A by . . . [Officer] Wilson." (Doc. # 31 at 6.) Hewitt also repeats his claims that Dr. King provided written and verbal "no handcuff" instructions. (*Id.*)

In this case, even assuming *arguendo* Hewitt had a serious medical need, Defendants show they did not act with deliberate indifference, and Hewitt provides *no* evidence to support his contrary allegations. The record shows Defendant Wilson was *not* ordered by Dr. King to refrain from handcuffing Hewitt when Hewitt returned to NNCC after surgery on February 15, 2011. The only evidence in the record pertaining to Dr. King's post-surgery instructions is the ITS provided by Defendants, and the ITS contains no such order.

This absence in the record of any post-surgery "no handcuffs" order is supported by Dr. King's declaration. There, Dr. King states his normal habit and practice is *not* to instruct that an inmate be free from arm restraints or handcuffs following fistula placement, absent very unusual circumstances–circumstances that were not present (or at least not noted) after Hewitt's surgery.[4]

---

[4] Dr. King goes on to note that such determinations are probably best made by appropriate security personnel, not physicians. (Doc. # 17-1, Ex. D at 7 ¶ 7.)

8

1 Further, the officers who actually transported Hewitt to and from his surgery state they did not receive
2 any "no handcuffs" orders.

3 Similarly, the record shows Dr. King did not issue any instructions with respect to aftercare. The
4 record is completely devoid of any instruction from Dr. King that Hewitt go to NNCC's hospital unit
5 instead of general housing.

6 In light of this evidence, the court finds there is no genuine issue of material fact regarding the
7 substance of Hewitt's allegations, *i.e.*, whether: (a) Defendant Wilson received medical orders not to
8 handcuff Hewitt after his surgery, and (b) Defendants Gedney, Peery and Watson were ordered (or
9 otherwise required) to place Hewitt in medical aftercare instead of general housing after Hewitt's
10 surgery. The court finds Dr. King did *not* order Hewitt to be free from handcuffs after his fistula surgery
11 on February 15, 2011, and Dr. King did *not* order Hewitt to be placed in medical aftercare instead of
12 general housing.

13 Based on these findings, the court further finds that, under the legal standards attendant to a
14 deliberate indifference claim, Defendant Wilson could not have *known* the placement of handcuffs on
15 Hewitt would pose an excessive risk to Hewitt's arm. *See Farmer*, 511 U.S. at 837. Defendant Wilson
16 was not instructed by Dr. King (or any other medical professional) to refrain from handcuffing Hewitt
17 after Hewitt's surgery. Further, if Defendant Wilson could not have known of the risk, it follows that
18 he could not have *disregarded* that risk, either. *See, e.g.*, *Johnson v. Lewis*, 217 F.3d 726, 734 (9th
19 Cir. 2000) ("[T]o act with deliberate indifference, an official must have actual knowledge of an
20 excessive risk to inmate health or safety and must deliberately disregard that risk.") (citing *Farmer*, 511
21 U.S. at 837).

22 Additionally, without any orders from Dr. King, Defendant Wilson could not have "intentionally"
23 or "purposefully" interfered with the express orders of Hewitt's prior physician for reasons unrelated to
24 Hewitt's medical needs. *See Estelle*, 429 U.S. at 104 (citation omitted); *Akhtar*, 2012 WL 5383038 at *9
25 (citing *Jett*, *supra*, 439 F.3d at 1096). In any event, Dr. Murphy's medical notation that Hewitt's failed
26 surgery was "unrelated to 'cuffs'" is competent evidence that Defendant Wilson's conduct did not *cause*
27 Hewitt's alleged harm. *Id*. Accordingly, Defendants have demonstrated the absence of a genuine issue
28

9

of material fact regarding whether Defendant Wilson acted with deliberate indifference.

The same rationale applies to Defendants Gedney, Peery and Watson. Neither of these Defendants could have known that failure to place Hewitt in medical aftercare at NNCC would constitute an excessive risk to Hewitt's health. Dr. King did not recommend such a course of care. Even if Defendants Gedney and Peery, as Hewitt's alleged treating physicians, had an independent obligation to place Hewitt in medical aftercare at NNCC, Hewitt provides no prison policy or administrative regulation, and he cites no relevant course of conduct,[5] that would impose such an obligation on these Defendants. Nor does Hewitt provide any evidence of the appropriate standard of medical care, or a routine course of conduct, physicians must follow after a patient undergoes fistula surgery. Therefore, the court finds Defendants have met their burden of showing they did not act with deliberate indifference.

The burden now shifts to Hewitt to set forth specific facts that shows a genuine issue for trial. *See Matsushita*, 475 U.S. at 586. Upon close review of the record, the court finds Hewitt fails to do so. Hewitt provides *no* evidence showing Dr. King made the orders referenced above. Instead, in his opposition brief, Hewitt, without factual substantiation, contends that a genuine factual dispute remains regarding whether Defendant Wilson's placement of handcuffs on him caused his failed fistula surgery. This contention, however, aside from the clear evidence in the record refuting it (*see* Doc. # 18-1, Ex. B at 4), is misdirected.

The legal issue before the court is not whether Defendant Wilson *caused* Hewitt's failed fistula surgery by placing handcuffs on him. Rather, the issue is whether Defendant Wilson's placement of handcuffs on Hewitt constituted deliberate indifference to a serious medical need. As the court explained

---

[5] Hewitt repeatedly refers to the care he received after his second fistula surgery on March 22, 2011. (*See* Doc. # 31 at 3, 4, 5, 6.) According to Hewitt, Dr. King ordered him to be free from cuffs after the second surgery and Hewitt was later placed in NNCC's medical aftercare. (*Id.* at 6.) Because the allegations in Hewitt's complaint refer only to Defendants' conduct surrounding his February 15, 2011 surgery, his references to the second surgery are inapposite. In any event, even if the March 22, 2011 surgery were relevant, Defendants in their reply brief show Hewitt's allegations regarding that surgery have no evidentiary support. (Doc. # 38 at 4.) Defendants refer to Hewitt's NDOC medical chart (Doc. # 39-1, Ex. A), Sierra Surgery's hospital records (*see id.*, Ex. B), Sierra Surgery's Inmate Transfer Summary dated March 22, 2011 (*id.* at 9), Physician Progress Notes dated March 22, 2011 (*id.* at 14), Physician's Orders dated March 22, 2011 (*id.* at 25), and Post Operative Instructions Ambulatory Surgery Patients form dated March 22, 2011 (*id.* at 33). *None* of these documents contain a "no handcuffs" order or an order recommending Hewitt's placement in medical aftercare.

above, the undisputed facts show Defendants lacked the requisite knowledge to have acted with deliberate indifference. Defendant Wilson could not have *known* the placement of handcuffs on Hewitt would pose an excessive risk to Hewitt's arm because no medical orders existed that would have admonished him not to do so. The same applies to Defendants Gedney, Peery and Watson regarding medical aftercare.

Accordingly, the court recommends Defendants' Motion for Summary Judgment (Doc. # 28) should be **granted**. As a consequence, Defendants' qualified immunity argument is moot.

**B. Hewitt's Motion for Court Order (Doc. # 35)**

In this motion, Hewitt alleges certain NDOC employees, "Diane Kerpatrick, Officer Frobes, Officer Bianci and Unit Caseworker John Bucanan," have retaliated against him for filing the instant civil suit. (Doc. # 35 at 1.) He claims these employees have forced him to live in a cell with no ventilation, which has caused him heat exhaustion, stress-related heart pain, large quantities of nitroglycerin and elevated blood pressure. (*Id.*) As a disabled person with migraines, kidney failure, sciatica, and degenerative disk disease, Hewitt asserts Bucanan and Kerpatrick refused to move him into a newly vacated cell for handicapped or disabled prisons, which happens to be the only cell in his unit with working ventilation. (*Id.* at 1-2.) He claims these officers refused to move him "as retaliation to see Plaintiff suffer, and possibly cause Plaintiff's death." (*Id.* at 2.) Hewitt makes these allegations against Defendants "through" these employees. (*Id.* at 1.) Hewitt requests an order from the court that he be moved to another unit or cell for disabled persons until the ventilation is repaired. (*Id.* at 2.)

Under the Ninth Circuit's standards of liberal construction, *see Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988), the court construes Hewitt's motion as a request for injunctive relief. Clearly, Hewitt's request does not seek dispositive relief on the merits of his Complaint. Rather, his motion addresses ventilation-related conditions of his cell.

In their opposition brief, Defendants contend Hewitt's motion should be denied for two reasons. (Doc. # 41.) First, Defendants argue Hewitt's motion requests injunctive relief but Hewitt has neither cited to nor argued from the relevant legal standards governing injunctive relief. (*Id.* at 2.) Second, Defendants contend Hewitt fails to show a relationship between his alleged injury and the conduct

11

1  alleged in his Complaint. (*Id.*) Defendants assert the appropriate channel to address this new issue is not
2  through the court, but instead through NDOC's normal grievance process. (*Id.*)

3        In addition to Hewitt's failure to present arguments under the legal standards attendant to
4  injunctive relief, the court finds two problems with Hewitt's request. The first problem is that Hewitt
5  seeks an injunction against persons not named as parties in this lawsuit. Courts may not rule on the rights
6  of persons not currently before them. *Zepeda v. U.S. Immigration Serv.*, 753 F.2d 719, 727 (9th
7  Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and
8  subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not
9  before the court."). Because Officers Kerpatrick, Frobes, Bianci and Bucanan are not parties to this
10 action, the court should not fashion injunctive relief that affects the rights of these individuals.

11       Secondly, the ventilation-related conditions of Hewitt's cell and the officers' alleged conduct
12 pertaining thereto is clearly unrelated to the underlying lawsuit. A request for injunctive relief "must
13 relate to the allegations in the complaint. . . . A party seeking preliminary injunctive relief 'must
14 necessarily establish a relationship between the injury claim in the party's motion and the conduct
15 asserted in the complaint.'" *Anaya v. Campbell*, No. CIV S-07-0029, 2009 WL 425034, at *1 (E.D.
16 Cal. 2009) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Although the Ninth Circuit
17 has not addressed the issue directly, other circuits as well as the District of Nevada, have so held. *See*
18 *Johnson v. Alvarez*, No. 2:11-cv-00484, 2012 WL 398443, at *3 (D. Nev. 2012) (collecting cases from
19 other circuits); *Padilla v. Nevada*, No. 3:08-cv-410, 2011 WL 2746653, at *8 (D. Nev. 2011) (collecting
20 the same cases); *Ellis v. Benedetti*, No. 3:08-cv-00657, 2012 WL 786258, at *5 (D. Nev. 2012); *Lewis v.*
21 *Allen*, No. 3:10-cv-00083, 2011 WL 7116310, at *4 (D. Nev. 2011).

22       As explained in Section I of this Report and Recommendation, the underlying lawsuit involves
23 an Eighth Amendment claim under section 1983, which is wholly unrelated to Hewitt's allegations about
24 the ventilation in his cell, and the officers' alleged retaliation against him for filing this lawsuit.
25 Accordingly, it is recommended that Hewitt's Motion for Court Order (Doc. # 35) should be denied.
26 **C. Hewitt's Motion for Temporary Restraining Order**

27       This motion (Doc. # 44) is similar to Hewitt's Motion for Court Order discussed above (Doc.
28

# 35). This motion contains allegations of retaliation for filing this lawsuit by Defendants through the conduct of Officers Kerpatrick, Frobes and Bianci. (Doc. # 44 at 1.) In this motion, however, Hewitt alleges these officers retaliated in different ways. Hewitt alleges the officers shut off his cold water, refused to send out his legal mail, and threatened to body slam him on his face and put tight cuffs on him. (*Id.* at 1; Ex. A at 4.) In support of his motion, Hewitt provides three NDOC grievances in which he makes these same allegations. (*Id.*, Exs. A, B.)

As explained in Section III.B of this Report and Recommendation with regard to Hewitt's Motion for Court Order, a request for injunctive relief must relate to the allegations in the complaint. *See, e.g., Johnson*, 2012 WL 398443, at *3. As the allegations Hewitt presents in the instant motion are unrelated to his complaint, Hewitt's motion should be denied.

In addition, Hewitt's motion appears to be moot. According to Jim Prentice, a Facility Supervisor III at NNCC, as of June 28, 2012, the sink units in all of the cells Hewitt has occupied over the relevant period are "functioning properly." (Doc. # 47, Ex. C at 7.) Hewitt has set forth no arguments or documentary evidence that would rebut this assertion. Thus, alternatively, Hewitt's motion should be denied as moot.

**IV. RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order:

1. **GRANTING** Defendants' Motion for Summary Judgment (Doc. # 28);
2. **DENYING** Hewitt's Motion for Court Order (Doc. # 35); and
3. **DENYING** Hewitt's Motion for Temporary Restraining Order (Doc. # 44).

The parties should be aware of the following:

1. They may file, pursuant to 28 U.S.C. section 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Judge.

13

2. This Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Judge's Order.

DATED: November 21, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE